DECISION AND JOURNAL ENTRY
Defendant, William A. Snow, has appealed from his conviction by the Summit County Court of Common Pleas for murder. We affirm.
On March 22, 1999, Defendant was indicted on one count of murder, in violation of R.C. 2903.02(A), with a firearm specification. On June 22, 1999, Defendant moved to suppress all statements made to the police. The motion was denied following a hearing on the matter. After a jury trial, Defendant was found guilty of the murder charge and the firearm specification. Defendant was sentenced to a mandatory three years incarceration for the firearm specification, and to fifteen years to life imprisonment for the murder charge with the sentences to be served consecutively. Defendant timely appealed and has raised one assignment of error for review.
 ASSIGNMENT OF ERROR The trial court erred in admitting [Defendant's] confession and the fruits obtained therefrom into evidence because his Miranda warnings were inadequate, he had no attorney present, and the totality of the circumstances showed the statements to be involuntary.
In his sole assignment of error, Defendant has argued that his confession and any evidence deriving therefrom should have been suppressed because (1) his state of intoxication and lack of sleep made his confession involuntary; (2) the Miranda warnings given had grown stale over the course of the interrogation; and (3) his requests for an attorney were ignored. Upon consideration of each of these arguments, this court finds them to be without merit.
When considering a motion to suppress, the trial court assumes the role of trier of fact and thus, stands in the best position to resolve issues of fact and witness credibility. Statev. Klein (1991), 73 Ohio App.3d 486, 488, citing State v. Clay
(1973), 34 Ohio St.2d 250. Accordingly, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. Klein, supra. Where there is substantial evidence to support the factual findings of the trial court, its ruling will not be disturbed on appeal absent an error of law.Id.
The waiver of the Fifth Amendment right not to incriminate oneself and a subsequent confession must be made "voluntarily, knowingly and intelligently." Miranda v. Arizona (1966),384 U.S. 436, 444, 16 L.Ed.2d 694, 707. Absent evidence that coercive police conduct overcame Defendant's will and critically impaired his capacity for self-determination, this court will presume that Defendant's decision to waive his Fifth Amendment privilege is made voluntarily. State v. Dailey (1990), 53 Ohio St.3d 88,91-92.
To determine whether a statement was voluntary, the court must consider the totality of the circumstances, looking specifically at Defendant's age, mentality, and prior criminal experience; the length, intensity, and frequency of the interrogation; and the existence of physical deprivation or mistreatment; and the existence of any threat or inducement.State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus, vacated as to death penalty (1978), 438 U.S. 911,57 L.Ed.2d 1155. While courts must presume that a defendant did not waive his rights, in some circumstances, waiver can be inferred from the actions and words of the defendant. North Carolina v.Butler (1979), 441 U.S. 369, 373, 60 L.Ed.2d 286, 292.
When determining if a defendant has impliedly waived his rights, courts are to consider the circumstances surrounding the interrogation, including evaluation of the defendant's age, experience, education, background, intelligence, and capacity to understand the warnings given to him, the nature of his rights and the consequences of waiving those rights. Fare v. Michael C.
(1979), 442 U.S. 707, 725, 61 L.Ed.2d 197, 212. "[T]he fact that a suspect chooses to speak after being informed of his or her right is, of course, highly probative." Oregon v. Elstad (1985),470 U.S. 298, 318, 84 L.Ed.2d 222, 238. The Ohio Supreme Court has consistently held that evidence of police coercion, such as physical abuse, threats, or deprivation of food, medical treatment or sleep is necessary to render a confession or a waiver involuntary. See State v. Hill (1992), 64 Ohio St.3d 313, 318;State v. Cooey (1989), 46 Ohio St.3d 20, 28, certiorari denied (1991), 499 U.S. 954, 113 L.Ed.2d 482; State v. Clark (1988),38 Ohio St.3d 252, 261.
Defendant has first argued that he did not voluntarily waive his constitutional rights. Defendant acknowledges that he was read each of his rights prior to questioning and that he was repeatedly questioned whether he understood such rights. He further acknowledges that he understood each of the rights as read to him and indicated his understanding to the officers questioning him. He contends, however, that the circumstances surrounding the interrogation were such that his confession was not voluntary. Specifically, Defendant has argued that the circumstances surrounding his interrogation showed him to be emotionally upset, intoxicated, and sleep deprived.
It should first be noted that after being informed of his rights, and acknowledging that he understood such rights, Defendant indicated that he wished to waive those rights and speak with the police about the events that had transpired. Defendant then proceeded to give three separate statements to the police. In addition to his verbal assent to waive his rights, his actions in speaking with the police indicate that he wished to waive his rights and enter a confession.
Furthermore, Defendant has failed to indicate how his waiver and confession were rendered involuntary by the circumstances surrounding his waiver and confession. As stated previously, police coercion is required to render these involuntary. It should be noted that while there is some evidence that Defendant was upset when questioned, his emotional reaction to the events of the evening do not constitute coercion. Additionally, upon review of the transcript of the suppression hearing, the facts presented at the hearing do not support the remainder of Defendant's contentions.[1] First, he has contended that he was intoxicated after drinking heavily that day and evening. Several police officers testified that Defendant did not appear intoxicated after he was taken into custody. In fact, Defendant himself stated that he was not intoxicated either at the time of the incident or at the time he was questioned. Second, Defendant has argued that he was exhausted to the point of being physically worn down and incapable of voluntarily waiving his rights. The testimony at the suppression hearing indicated that the police roused Defendant from his slumber when they took him into custody. An officer who questioned him indicated that Defendant did not appear tired while he was being questioned. Defendant's alleged lack of sleep does not rise to the level of sleep deprivation required to make his statements coerced.
Since Defendant was read his rights, acknowledged that he understood those rights, and then chose to waive those rights by giving three statements to the police, this court will presume that Defendant's statements were voluntary. Additionally, as Defendant has failed to indicate how his statements were rendered involuntary by police coercion, Defendant's motion to suppress those statements was properly denied.
Defendant has next contended that his Miranda warnings grew stale over the course of the interrogation. He alleges that he should have been read his rights prior to the giving of each of his three statements. He further alleges that since he was questioned by three officers, each officer should have read his rights to him. We disagree.
Pursuant to State v. Roberts (1987), 32 Ohio St.3d 225,Miranda warnings are sufficient if they are read within a sufficiently proximate time and place to the interrogation to insure that the suspect is protected from coercive pressures. Id.
at 232. When determining this, the court is to review (1) the length of time between the Miranda warnings and the commencement of the interrogation; (2) the place in which the warnings were given and where the interrogation took place; (3) whether the warnings were given by the same officer who conducted the interrogation; (4) the extent that this statement differs from previous statements; and (5) the intellectual capacity and emotional state of the suspect. Id.
Defendant was read his rights in the interrogation room immediately prior to being questioned by one of the officers who conducted the questioning of Defendant.[2] The entire interrogation lasted approximately two hours. The same two officers were present throughout the interrogation and took all three statements from Defendant. The third officer referred to by Defendant merely entered the room to conduct a gunshot residue test on Defendant's hands and did not conduct any questioning of Defendant. Defendant was asked after each right was read to him if he understood that right and to each he acknowledged that he did. At no point did Defendant ever state that he was unsure or unclear of the meaning of the rights as read to him. As stated previously, Defendant denied being intoxicated and gave no indication that he was otherwise mentally impaired. Upon review of the facts presented to the trial court at the hearing, Defendant's Miranda warnings were sufficient to protect him from any undue coercion by the officers questioning him.
Finally, Defendant has contended that he was denied his right to counsel during his questioning. Specifically, he has claimed that he requested an attorney but that his requests were either ignored by the officers or that his request led to a threat to increase the charges pending against him.
The invocation of the right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. Davisv. United States (1994), 512 U.S. 452, 459, 129 L.Ed.2d 362, 371. If the statement is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, the cessation of questioning is not required. Id. The United States Supreme Court has stated:
 We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who — because of fear, intimidation, lack of linguistic skills, or a variety of other reasons — will not clearly articulate their right to counsel although they actually want to have a lawyer present. But the primary protection afforded suspects subject to custodial interrogation is the Miranda warnings themselves.
 `[F]ull comprehension of the rights to remain silent and request an attorney [is] sufficient to dispel whatever coercion is inherent in the interrogation process.' A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although Edwards provides an additional protection — if a suspect subsequently requests an attorney, questioning must cease — it is one that must be affirmatively invoked by the suspect.
(Citation omitted; alterations in original.) Id. at 460-461,129 L.Ed.2d at 372, quoting Moran v. Burbine (1986),475 U.S. 412, 427, 89 L.Ed.2d 410, 424. The court in Davis then concluded that the statement "Maybe I should talk to a lawyer" was insufficient to require that questioning cease.
The testimony at the hearing indicates that Defendant asked the officers questioning him whether he needed an attorney. The officer testified that he responded to Defendant's question merely by stating that the decision was one to be made solely by Defendant. The officer testified that Defendant never again mentioned the matter and proceeded to speak with the officers about the night's events. At the hearing, Defendant testified that he made four or five requests for an attorney but that his requests were largely ignored. However, when asked to sequentially outline when he made such requests he could only identify two situations with relation to the course of the interrogation. He wavered about a possible third time. Defendant further alleged that when he made his second request for an attorney he was threatened with enhanced criminal charges. The officer who testified expressly denied that any threats were made.
With regard to Defendant's first alleged request for an attorney, merely inquiring as to whether one needs an attorney is insufficient to require that the questioning cease. Additionally, Defendant continued to speak with the officers following this question, thereby making it ambiguous whether he was requesting representation by counsel. These actions indicated a desire by Defendant to proceed unrepresented with the questioning.
The issue presented by Defendant regarding his second and other subsequent requests resolves itself into one of the credibility of the witnesses. However, the determination of a witness' credibility is the sole province of the trier of fact, and, upon review, we may not substitute our judgment on this issue without a demonstration upon the record that a witness' testimony was inherently incredible. In the instant cause, Defendant has failed to make such a demonstration. Further, our examination of the record provides us with no basis upon which we could hold that the police officer's testimony was incredible.
Defendant's assignment of error is without merit and is hereby overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant. Exceptions.
 _____________________________ LYNN C. SLABY, FOR THE COURT.
BAIRD, P.J. and WHITMORE, J. CONCUR.
[1] Defendant appears to support his contentions with testimony presented at his criminal trial. The motion to suppress was denied based solely upon the testimony presented at the hearing on this matter. This court will not consider the additional facts presented at trial as they were not properly before the trial court when it issued its ruling on the motion.
[2] While the police officer testified that he recalled reading Defendant his rights once, Defendant actually testified that over the course of the interrogation he was read his rights twice by the officers questioning him.